# EUSTAQUIO MILLAND, Plff.,

*v.*

# NORTH GERMANIC MARITIME INSURANCE COMPANY, Dft.

San Juan, Law, No. 505.

1. There having been a total loss of the vessel and cargo, the principle of general average has no application.
2. Article 765, Porto Rican Code of Commerce, is not mandatory, and the failure of the owner to give the notice thereby required will not exempt the underwriters from liability.
3. If additional loss results by reason of said failure, the owner will be responsible to the extent thereof.
4. What is due diligence in giving the notices required by the insurance policy must be governed by the circumstances of each case.
5. Notice within twenty days held reasonable.

Opinion filed February 1, 1908.

*Messrs Sweet, Rossy, & Campillo,* attorneys for plaintiff.

*Mr. C. Coll y Cuchi,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

This is a suit under the terms of two insurance policies to

Note.—*Marine insurance.*—As to what is a total loss, see note to Great Western Ins. Co. v. Fogarty, 22 L. ed. U. S. 216.

### Milland v. North Germanic Maritime Ins. Co.

recover the value of forty (40) bales of tobacco and 12 bundles containing 60 rolls of tobacco respectively, the former valued at $2,000 and the latter at $800. Both are "valued policies," and were issued on the 31st day of May, 1907, at San Juan, Porto Rico, upon payment of premiums of $8.87 and $3.31 respectively. Under a stipulation in writing to that effect, the court tried the case without a jury.

The complainant simply alleges the insurance and the total loss by shipwreck of the goods. The answer denies the allegations of the complaint *in toto*. On the trial it developed that the only defense the company has to this suit is the fact that it claims that it was not promptly notified of the loss so that it might have made an investigation as to the truth of the same. The policies are in Spanish, and, in the ordinary maritime form, insure these goods as is usual, to be shipped in a small schooner named "Angel María" from the city of San Juan to the island of Vieques, Porto Rico. The schooner sailed on the 1st of June, 1907, with a cargo of general merchandise, including the tobacco of the plaintiff. The captain states that he sailed all day with a light wind and that nothing worthy of notice occurred until night, when they encountered heavy squalls of rain with wind. That the vessel continued during the night and next day without incident, the wind being still rather light, but the sea heavy. That on the second day out, under the conditions stated, the night being very dark, in passing a shoal the witness realized that the vessel had struck something, but nevertheless continued in her course. That in about ten minutes it was ascertained that the craft was leaking badly and water working its way into the hold rapidly. That the pumps were immediately worked, but that this failed to keep down the water. The vessel, in spite of these efforts, settled rapidly. That there-

Milland v. North Germanic Maritime Ins. Co.

upon, it being evident, as the captain states, that he could not reach port, and the danger being imminent, and the craft without any small boat, that practically all of the tobacco shipped by the plaintiff, and insured by the defendant, was thrown overboard, together with all the other cargo the vessel had. That about this time the men on the vessel in question saw a boat from Vieques and called for help, but received no response. That witness was then satisfied he could not reach any port with his vessel, and made for a shoal called "Caballo Blanco," where he succeeded in beaching his vessel, from which himself and his crew were rescued next morning by a boat from Vieques. He states that upon reaching Vieques he immediately notified the justice of the peace and the collector of customs of the disaster, and that the latter took charge of the bills of lading, invoices, etc., of the cargo of the ship as a total loss. That there were a few bales or rolls of tobacco and other things in the boat when it was finally rescued and brought into Vieques, but that all of the same was ruined by the sea water so as to be worthless. That on the same day he proceeded to Humacao, because there was no notary in Vieques, and made an affidavit as required by law, showing the total loss, to relieve himself of responsibility in the premises. A copy of this affidavit was introduced in evidence. That his relations to the cruise and the cargo of the vessel then ceased. It does not appear what the collector of customs may have done with reference to the vessel and its salvage, but it is suggested that he probably did nothing, as it was reported to him and he could see that the craft was a total loss. The plaintiff states that he was ill and confined to his bed at the time, but that, about June 3d, a Mr. Torres of Vieques wired notice of the loss to San Juan, and that he himself wrote to the defendants' agents in

San Juan as soon as he was able, two or three days later, telling them about the total loss of these shipments of the tobacco, etc., and that he received no reply to this letter. The defendants deny ever having received any such letter. He further testified that he then wrote to Mr. Torres of Vieques, and asked him to go to San Juan and collect the insurance. Defendants admit that Mr. Torres called on their agents in San Juan and presented one of the policies, but that they refused to pay because same had not been indorsed, and because they had not been notified sooner, it being then some fifteen or perhaps even twenty days after the alleged loss. Failing to receive recognition or payment from the agents of the defendant through the correspondence aforesaid, or through Mr. Torres, plaintiff then wrote to a firm of merchants in San Juan, named Villar & Company, and sent them the papers, and they replied to him under the date of July 6th, 1907 (their letter being in evidence), that they had been to see the agents and showed them the invoices, the insurance policies, and the protest, and demanded payment, but that the agents had refused payment on the ground, as they then claimed, that it was not a total loss, and therefore they required a list of the whole cargo and of the amount belonging to each owner that it was necessary to throw overboard, etc. Plaintiff, of course, could furnish nothing of this kind, as the cargo, according to him, was a total loss. His subsequent negotiations with the defendant failed to bring about a settlement, so he brought this suit.

The proof, to our mind, unquestionably establishes the fact that the cargo was a total loss, and therefore there can be no question of averaging up the loss equally upon the whole cargo, less salvage, as is usually the case.

The only point in the case, and it is the only one seriously

Milland v. North Germanic Maritime Ins. Co.

urged by defendant, is this alleged failure of the plaintiff to notify defendant promptly of the loss. Plaintiff states that he knew it was his duty to give this notice promptly, and that he did write them as quickly as his illness would permit, believing also that the wire sent immediately by Mr. Torres from Vieques was sufficient; but, as stated, defendants say they did not receive the letter and they do not mention any telegram. Circumstances, though, are, we think, with the plaintiff, for he states that after waiting for reply to his letter for a few days, and not receiving any, that he then had Mr. Torres call on the agents at San Juan, and, when he ascertained that Torres could not get any satisfaction, he procured Messrs. Villar & Company to call on them with the policies, the invoices of his own goods, and the protest or proof of the total loss, made by the captain of the vessel before a notary public at Humacao, the day after it happened. Mr. Torres must have called on defendants' agents not to exceed fifteen or twenty days after the loss, and all these notices were given them within a month after the loss.

Under all the circumstances, Vieques being an island some 20 miles off the east coast of Porto Rico, and the weather not always such as that communication can be had at all times, we do not think that the delay here was unreasonable. At any rate, after Torres notified defendants of the loss, they had ample time to make any investigation they saw fit at the custom house or elsewhere, so as to verify the fact of its being a total loss, even though this burden ordinarily is on the plaintiff.

Counsel for defendant claims that, under article 765 of the Porto Rican Code of Commerce, it became plaintiff's duty to notify the underwriter of the loss by the first mail following that by which he received the notice himself. While this is

true, we think plaintiff in this case was not guilty of any unreasonable delay, and anyway that section is not technically mandatory, because it provides in its closing words that the insured, in case he fails to give such notice, "shall answer for the losses and damages that might arise through his omission." In other words, to our mind that section simply means that if the underwriters suffer any loss or damage through the failure of the insured to give this notice, the insured shall be liable therefor; not that the failure to give such notice within a reasonable time would bar the plaintiff from recovery at all. Counsel for plaintiff, in his brief, quotes to us a paragraph from Marshall on Insurance, 2d ed. page 559, which sets forth that "the idea of abandonment, therefore, presupposes a total loss in this latter sense, and implies that something remains . . . which may be given up or abandoned to the insurers."

So it can be seen that notice is particularly necessary in abandonment cases, and is not of great importance, save for purposes of verification, in cases such as this, of total loss.

In Young v. Union Ins. Co. 24 Fed. 279, the doctrine is laid down (we quote from the syllabus) that, "when the delay of the insured in giving notice of abandonment has not prejudiced the insurer, such delay will not impair or affect the rights of the insured." In that case the disaster of the schooner occurred in November, and the notice of abandonment was not given until the 7th of March following; but even there, the court says that it could not see, under the circumstances, how that delay could have worked any injury to the insurer.

Due diligence, under the circumstances of every case, is all that can be required under the law of Porto Rico under the terms of these policies, and we think that the plaintiff exercised at least reasonable diligence here. We see no real merit in

the position of defendant. Therefore judgment will be entered for the platntiff for the full amount which his proofs showed his loss to be,—that is, $2,707.97 with costs,—and it is so ordered.